492 P.2d 1212

**ARIZONA PUBLIC SERVICE COMPANY, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Bernard Maldonado, Respondent Employee.**

**No. 1 CA–IC 605.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 1, 1972.

Rehearing Denied Feb. 28, 1972.

Review Denied May 23, 1972.

John S. Schaper, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Chris T. Johnson, Phoenix, for respondent Employee.

HAIRE, Judge.

In this review of an award by the Industrial Commission we are asked to find that because of statutory amendments following the holding of the Arizona Supreme Court in Whyte v. Industrial Commission, 71 Ariz. 338, 227 P.2d 230 (1951), this decision is no longer applicable in determining the post-injury earning capacity of a workman who has incurred a permanent partial disability. In Whyte the court set forth the principle that in the determination of the amount which represents the injured workman's post-injury earning capacity, the Commission should adjust or roll-back the actual post-injury earnings of the injured workman when the evidence shows that the post-injury earnings have been affected by a general increase in wage levels.

Initially, we reject petitioner's claim that subsequent statutory amendments have rendered inapplicable the opinion of the Arizona Supreme Court in Whyte. The pertinent statutory provisions in effect at the time of the Whyte decision were found in subsections (c) and (d) of § 56–957, Ariz.Code Ann. (1939). These subsections, together with the corresponding statutory provisions now in effect, subsections C and D of A.R.S. § 23–1044, are set forth in Footnote 1 below.[1] In our opinion the re-

---

1. Ariz.Code Ann. § 56–957(c) and (d) (1939) reads as follows:

"(c) In cases not enumerated in subsection (b), where the injury causes partial disability for work the employee shall receive, during such disability, compensation equal to fifty-five [55] per cent of the difference between his average monthly wages before the accident *and the monthly wages he is able to earn thereafter*, but the payment shall not continue after the disability ends, or the death of the injured person, and in case the partial disability begins after a period of total disability, the period of total disability shall be deducted from such total period of compensation.

"(d) In determining the percentage of disability, consideration shall be given, among other things, to any previous dis-

vised statutory language mandates the result reached in Whyte even more clearly than did the statutes in effect at the time of the Whyte decision. The statutes now expressly require that the post-injury evaluation be based upon "earning capacity" rather than upon the post-injury "monthly wages" as required before the amendment. While it is usually true that the concepts of "earning capacity" and "monthly wages" vary considerably, *see* 2 A. Larson, Workmen's Compensation Law, § 57.21 (1971), even before the amendment the Arizona Supreme Court had construed the term "monthly wages" as used in the prior statute as being synonymous with "earning capacity". *See* Whyte, *supra*. The subsequent amendment merely recognizes the construction previously adopted by judicial decision. However, we do not mean to imply that the pre-amendment application of the "earning capacity" test was in any way in derogation of the pre-amendment legislative intent. To the contrary, in our opinion, when the language "monthly wages he is able to earn thereafter" found in subsection (c) of § 56–957, Ariz.Code Ann. (1939) is considered together with the provisions of subsection (d) thereof, which require the Commission to consider factors other than

actual wages received, the conclusion is inescapable that an earning capacity test was intended.

 While it is logical, and well established in Arizona law that evidence as to post-injury earnings creates a presumption that the injured workman has an earning capacity equal to the amount of these post-injury earnings, *see* Allen v. Industrial Commission, 87 Ariz. 56, 347 P.2d 710 (1959), under certain circumstances post-injury wages considered by themselves may be a quite unreliable indicator of post-injury earning capacity. As stated in Larson:

> "Unreliability of post-injury earnings may be due to a number of things: increase in general wage levels since the time of accident; claimant's own greater maturity or training; longer hours worked by claimant after the accident; payment of wages disproportionate to capacity out of sympathy to claimant; and the temporary and unpredictable character of post-injury earnings."

2 A. Larson, Workmen's Compensation Law § 57.21 at 27 (1971).

We have no hesitancy in holding that an increase in general wage levels is one of the "other things" which the Commission may

---

ability, the occupation of the injured employee, the nature of the physical injury, and the age of the employee at the time of the injury. In case there is a previous disability, as the loss of one eye, one hand, one foot, or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability . as it existed at the time of the subsequent injury." (Emphasis added).

A.R.S. § 23–1044, subsecs. C and D (1971), the statute now in effect, reads as follows:

"C. In cases not enumerated in subsection B of this section, where the injury causes permanent partial disability for work, the employee shall receive during such disability compensation equal to fifty-five per cent of the difference between his average monthly wages before the accident *and the amount which repre-*

*sents his reduced monthly earning capacity* resulting from the disability, but the payment shall not continue after the disability ends, or the death of the injured person, and in case the partial disability begins after a period of total disability, the period of total disability shall be deducted from the total period of compensation.

"D. In determining the amount which represents the reduced monthly earning capacity for the purposes of subsection C of this section, consideration shall be given, among other things, to any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury." (Emphasis added).

consider under A.R.S. § 23–1044 D along with "wages received for work performed subsequent to the injury" for the purpose of "determining the amount which represents the reduced monthly earning capacity" of the injured workman. For Arizona decisions subsequent to Whyte recognizing the applicability of the Whyte rule, see Kurtz v. Matich, 96 Ariz. 41, 391 P.2d 594 (1964); Allen v. Industrial Commission, 92 Ariz. 357, 377 P.2d 201 (1962); Allen v. Industrial Commission, 87 Ariz. 56, 347 P.2d 710 (1959); White v. Industrial Commission, 87 Ariz. 154, 348 P.2d 922 (1960). The Whyte rule is an application of the principle that it is only by the elimination of all variables except the injury itself that a reasonably accurate estimate can be made of the impairment of earning capacity attributable to the injury. Another application of this same principle is found in Sanchez v. Industrial Commission, 96 Ariz. 19, 391 P.2d 579 (1964), wherein the court held that when part-time employment as a musician was not considered in establishing the injured workman's average monthly wage,[2] then such part-time employment subsequent to the injury could not be considered in addition to his post-injury full-time employment in establishing post-injury earning capacity. *See also,* 2 A. Larson, Workmen's Compensation Law § 57.33 (1971).

Having decided that the statutory amendments relied upon by the petitioner do not require that we disregard the principle set forth in Whyte, we now look at the facts to determine whether the evidence supports the Commission's action in this case.

In 1964 Bernard Maldonado was injured by an accident arising out of and in the course of his employment with petitioner Arizona Public Service Company. A timely filed workmen's compensation claim resulted in an award for medical benefits only, since initially Maldonado had not been disabled from work for more than seven days.

In 1967, some three years later, the claim was reopened upon Maldonado's petition, and later that year he underwent disc surgery. Subsequent proceedings before the Commission eventually resulted in the Commission's award of November 18, 1970, which found that Maldonado had incurred a 21.17% loss of earning capacity entitling him to unscheduled permanent partial disability benefits in the sum of $63.21 per month, to continue until further order of the Commission.

Maldonado's average monthly wage had been established at $542.93 by a 1968 Commission award which became final and is not subject to attack in this review. The file shows that part of this average monthly wage was attributable to a base rate of pay of $463 per month. The balance of the average monthly wage in the amount of $79.93 per month was attributable to overtime and flag pay.[3] His post-injury average monthly earnings were $627.36, an amount obviously substantially in excess of the previously established average monthly wage. However, the Commission determined that because of a general increase in wage levels, these post-injury monthly earnings were not an accurate measure of his post-injury earning capacity, and entered an award entitling Maldonado to compensation as above indicated. Petitioner contends that assuming the applicability of the Whyte rule, the Commission erred in its application under the facts of this case.

A claimant relying upon the Whyte rule must show that his actual present earnings do not represent a reasonable basis for measuring his loss of earning capacity because, in comparison with his pre-injury earnings, his post-injury earnings have been inflated by a general increase in wage levels. The theory of Whyte, *supra,* is that when the evidence shows a general increase in wage levels, then the post-injury wage

2. The phrase "average monthly wage" when used in this opinion is used in its technical sense as defined in A.R.S. § 23–1041, subsec. D.

3. Flag pay refers to the hourly pay differential paid to an employee when he does work in a higher job classification than his then current hourly rate.

278

scale should be adjusted back[4] to the time of the injury so as to afford a fair and equitable basis of comparison with the injured workman's wage scale in the occupation he was engaged in at the time of injury. As emphasized in Whyte, *supra*, the intent of the legislature was:

". . . to furnish the commission with a yardstick by which it could with reasonable accuracy determine the diminished earning capacity of an injured employee and by the use of which no inequalities, inequities or injustices could arise. *To do this it, of course, intended that the length of the yardstick to be used should at all times remain constant.*" (Emphasis added). 71 Ariz. at 344, 227 P.2d at 233.

If both the post-injury earnings and the average monthly wage are measured on the same yardstick, for example, a standard full-time job unaffected by overtime or other extraneous factors which are unrelated to a general increase in the wage level, then the determination of the injured workman's diminished capacity is relatively easy —a simple comparison between the rolled-back post-injury occupation wage and the actual average monthly wage. However, if either the post-injury wage or the average monthly wage contains extraneous factors not common to the other, then while the roll-back eliminates one variable, i. e., the change in general wage levels, there still remain other variables which prevent a simple comparison from resulting in a true indication of the workman's diminished or increased earning capacity. The necessity for the elimination, as far as possible, of these other variables is illustrated and required by the Arizona Supreme Court's holding in Sanchez, *supra*. The necessity for the application of the Sanchez holding in a "roll-back" situation can be easily demonstrated. For illustrative purposes, as-

sume that in his new occupation the injured workman's post-injury monthly earnings averaged $600 per month, consisting of base pay of $400 and $200 in overtime. Assume also that this $600 when adjusted back to the wage scale at the time of injury is equal to $450. Assume further that the workman's average monthly wage at the time of injury has been established at $450, but that no overtime was involved. A simple comparison would indicate absolutely no loss of earning capacity. However, if we eliminate the variable, overtime ($200), so that the remaining post-injury earnings may be measured or compared on a yardstick of the same length as that which measured the pre-injury earnings, then it is immediately apparent that the workman has suffered a diminished earning capacity of $150 per month, the difference between $300 (his rolled-back post-injury earnings without overtime) and his pre-injury average monthly wage of $450. Of course the converse would also be true. If the average monthly wage contains overtime or flag pay components and this average monthly wage is then compared with a rolled-back post-injury wage from which these factors have been eliminated, then a simple comparison would result in an over-indication of the injured workman's diminished earning capacity.

■ Looking at the facts in the case before us, the Commission found that Maldonado's post-injury monthly earnings from Arizona Public Service Company as a senior electrical and mechanical helper averaged $627.36 per month. That amount was composed of monthly base pay of $593, together with shift differential pay making up the difference between $593 and $627.36. The base rate of a senior electrical and mechanical helper rolled-back to the time of injury was shown to be $428 per month. The Commission compared this base rate pay of

4. A completely different result would follow if the *average monthly wage* was adjusted *forward* and then compared with the actual present earnings. The "roll-back" approach is the correct approach under the Arizona statutes, since the ultimate basis for determination of the amount which represents the workman's reduced earning capacity is the average monthly wage "at the time of injury". A.R.S. § 23-1041, subsec. A (1971).

$428 with Maldonado's average monthly wage of $542.93, found a difference of $114.93 or 21.17%, and used this percentage as representing Maldonado's loss of earning capacity. It will be noted that the Commission rolled-back only that part of Maldonado's present earnings which represented his present base pay and then made a comparison with the full amount of Maldonado's average monthly wage, $542.93, representing base pay, overtime and flag pay. An attempted comparison on this basis violates the holding in Sanchez. An equitable and fair comparison could only be made after an elimination of the dissimilar factors so as to have yardsticks of the same length—in this particular fact situation base pay. Here the difference between the pre-injury base pay ($463) for an oiler and the pre-injury base pay for a senior electrical and mechanical helper ($428), was $35, a difference of 7.56%, and this percentage factor was a more accurate reflection of Maldonado's diminished earning capacity as measured by post-injury earnings alone than was the $21.17 percentage factor found by the Commission based upon its comparison of earnings with varying components. At this point it must be kept in mind that here we are considering only a method of adjusting the actual post-injury earnings so as to minimize the distortion which might otherwise be reflected by post-injury earnings inflated by a general increase in wage levels. In the final establishment of the injured workman's diminished earning capacity the Commission must, as required by A.R.S. § 23–1044, subsec. D, consider other factors when pertinent. Thus, if the evidence in a specific case indicates that a workman customarily performed overtime prior to his injury, but that because of his injury he is no longer able to work overtime, then this would be a factor, separate and apart from the change in economic conditions factor, to consider in establishing his post-injury diminished earning capacity. There is nothing in the evidence to indicate that such factors are present in this case. For this reason the award must be set aside.

 One further contention was raised by petitioner, and inasmuch as this same contention may be raised again before the Commissioner, we will discuss the same. The evidence discloses that from April 26, 1969 through March 19, 1970, Maldonado earned $1,867.59 in part-time employment as a driver-delivery man. These earnings were over and above his previously discussed earnings as a senior electrical and mechanical helper. We agree with the Commission's conclusion that it was not required to consider these earnings in establishing Maldonado's post-injury earning capacity, inasmuch as the evidence showed that Maldonado was ultimately incapable of retaining this employment because of his industrially-related disability.

The award is set aside.

EUBANK and JACOBSON, JJ., concur.