OPINION
JACOBSON, Chief Judge.
Dean Laker sustained a job-related injury on January 30, 1979. His claim was accepted and closed on July 29, 1981 with an award for unscheduled permanent partial disability, with a 19.30% reduction in earning capacity. Less than a year later, the insurance carrier filed a petition for rearrangement of compensation, alleging that “claimant is earning more, or as much as at date of injury.” On May 5, 1982, the Industrial Commission issued an award rearranging compensation. Laker requested a hearing which was granted. The administrative law judge found that the evidence established an increase in Laker’s earning capacity subsequent to the original award and reduced the loss of earning capacity thereby to 10.40% decreased compensation from $86.83 to $46.80 per month. That decision was affirmed on review and Laker now seeks relief from the rearrangement award in this court. Other facts will be discussed as they pertain to each issue.
Laker raises three issues on appeal: (1) whether the rearrangement petition alleged a change of circumstances sufficient to confer jurisdiction on the Industrial Commission to alter a prior final award; (2) whether the administrative law judge properly compared the original loss of earning capacity award, which was based on hourly rate and overtime, to Laker’s current wages which included an hourly pay differential; and (3) whether A.R.S. § 23-1047(D) prohibits the filing of a petition to rearrange within the year following the original loss of earning capacity award.
JURISDICTION
Laker argues that although the Industrial Commission retains jurisdiction of all *462 compensation cases to alter an existing award, it cannot act unless the allegation of “change of earning capacity” is a “change external to the injured worker.” He therefore argues that a carrier seeking to reduce an award under A.R.S. § 23-1044(F)(3) (Supp.1983) must allege and prove the same type of “changes” required by A.R.S. § 23-1044(F)(2) (Supp.1983). He submits that Whyte v. Industrial Comm., 71 Ariz. 338, 227 P.2d 230 (1951) and Arizona Sand & Rock v. Industrial Comm., 123 Ariz. 448, 600 P.2d 752 (App.1979) and principles of fairness mandate this result. We do not agree.
Neither the statute nor case law supports the proposition that a petition which alleges increased earnings is not sufficient to bring a worker’s prior award under the purview of the commission. A.R.S. § 23-1044(F)(3) allows rearrangement when it is shown that “earning capacity has increased.” [1] It is well established in Arizona that evidence of post-injury earnings creates a presumption of commensurate earning capacity. Arizona Public Service Co. v. Industrial Comm., 16 Ariz.App. 274, 492 P.2d 1212 (1972). Therefore, it is enough for the carrier to allege in the petition a change of circumstances in terms of increased earnings.
Laker submits that the post-injury earnings presumption is unfair in that it works in favor of the carrier both when it is seeking rearrangement or when the worker seeks rearrangement. This is an inaccurate assessment of the law. The presumption can be rebutted by the worker in each case by showing that post-injury earnings are not a true indicator of earning capacity. It is the worker’s burden to show that the source of the new income is an unreliable indicator of earning capacity. This burden is met by a showing among other things, that the increase is due to a rise in general wage levels, claimant’s own maturity, longer hours, employer sympathy or temporary and unpredictable income. Allen v. Industrial Comm., 87 Ariz. 56, 347 P.2d 710 (1959); 2 A. Larson Workmen’s Compensation Law § 57.21 (1980). When it is the worker seeking to rearrange because his earning capacity has changed, the worker need only show that his inability to secure or retain work is at least partially injury related. Fletcher v. Industrial Comm., 120 Ariz. 571, 587 P.2d 757 (App.1978); Oquita v. Industrial Comm., 120 Ariz. 610, 587 P.2d 1187 (App.1978). The burden then shifts to the carrier to show that the decrease in earning capacity is in no way caused by the injury. Wiedmaier v. Industrial Comm., 121 Ariz. 127, 589 P.2d 1 (1978); A.R.S. § 23-1044(G) (Supp.1983).
This analysis is consistent with the previous decisions in Whyte, supra, and Arizona Sand & Rock, supra. In the former case it was held that:
A reduction or increase in earning capacity occasioned by general business conditions ... cannot be considered by the commission as a basis for fixing or adjusting the compensation of an injured employee.
Whyte, 71 Ariz. at 346, 227 P.2d at 235. However, where the difference in wages is due to a change in the physical condition of the injured employee resulting from the injury or to the “peculiar or special efficiency of such employee” the Commission may consider the difference as indicative of changed earning capacity. Id.
Furthermore, the allegation of an increase in earnings presupposes a “change external to the claimant” as that phrase is *463 used in Arizona Sand & Rock, supra. The burden then shifts to the worker to prove that the increase in earnings is not commensurate with an increase in earning capacity. We find the allegations of the petition sufficient.
Laker next argues that a portion of the increase in earnings designated “merit raises” were in fact paid to all employees of St. Mary’s Hospital. From this premise, he argues that the carrier failed to present evidence that this was not a cost of living raise and failed to prove that Laker’s merit raise was anything more than an industry-wide increase, and therefore rearrangement is improper on this basis.
First, we note that merit raises which are based on continued satisfactory performance or longevity are subject to rearrangement by the Commission. Charles v. Industrial Comm., 25 Ariz.App. 280, 542 P.2d 1160 (1975). Second, Laker’s argument ignores the fact that once the carrier alleges an increase in earnings, the weight of the presumption that earning capacity is commensurate carries the employer’s burden of going forward. The burden then shifts to Laker, who failed to prove at the hearing that the increase was due to a general economic boom or other unreliable indicator. Therefore, the administrative law judge properly considered an increase in earning capacity based upon merit raises.
SHIFT DIFFERENTIAL
Laker contends that the administrative law judge improperly considered a “shift differential” in finding an increase in earning capacity. To understand this contention, additional facts are necessary. At the time of the original hearing in July of 1981, Laker had obtained employment as a security guard for St. Mary’s Hospital. At that time he was working the second shift and was paid 42 cents per hour as a shift differential. Subsequently, Laker transferred to the third shift and received an additional $1.15 per hour shift differential. The original award determining loss of earning capacity was based upon monthly wages which included overtime but did not specifically include the shift differential. The award indicated only that Laker was earning $4.60 per hour and that this figure rolled back to the date of injury yielded the figure $3.81 per hour.
Laker argues that the administrative law judge improperly ignored the res judicata effect of the prior award by considering the shift differential as evidence of increased earning capacity when it was not considered in the previous award even though Laker was receiving a shift differential at that time. The carrier responds that the shift differential, though ostensibly included in the determination of loss of present earning capacity, was actually factored out, and therefore even if the differential was incorporated into the second earning capacity calculations, the end result is the same as if it had never been considered.
The administrative law judge acknowledged in his findings the testimony of labor market consultants Wendy Snyder and Ronald Baker that the original award by the Commission “did not include or consider shift differential pay.” He also accepted the testimony of Laker that he was earning shift differential pay at the time of the original determination as well as at the time of the hearing to rearrange.
The expert, Mr. Baker, testified that using an hourly rate of $6.06 per hour which included an $.80 per hour shift differential and rolling back to 1979 (date of injury) by means of a ratio that incorporated the consumer price index, Laker would have a monthly income of $733.14 at a rate of $4.23 per hour in 1979. Baker compared that figure to the pre-injury earnings to find a new loss of earning capacity valued at 10.4% or a monthly entitlement of $46.80. The administrative law judge also had before him a prior memorandum of the Industrial Commission which calculated the increase in earning capacity by using figures which included the shift differential pay and arrived at an hourly rate of $4.17 per hour or an 11.67% loss in earning capacity. The administrative law judge made *464 no reference to this memorandum in his award granting rearrangement but rather based his award on the $4.23 per hour rate testified to by Baker.
The first question we must address is whether the shift differential, which existed at the time of the original loss of earning capacity hearing but was not considered, is a viable indicator of Laker’s increased ability to earn. We agree with Mr. Laker that if the administrative law judge adjusted the loss of earning capacity award downward by adding the variable which was extricated in the original loss of earning capacity determination, the evidence would not support the rearranged award.
Sanchez v. Industrial Comm., 96 Ariz. 19, 391 P.2d 579 (1964) and Arizona Public Service Co., supra, rejected the practice of comparing the post injury wage with the average monthly wage where one contains extraneous factors not common to the other. The reason given was that the comparison gives an inaccurate view of the lost capacity to earn suffered by the worker. Equity and fairness require that the “same yardstick” be used to measure diminished earnings.
Here, we are faced with a slightly different comparison. Rearrangement of a prior final award is statutorily mandated by A.R.S. § 23-1044(F) when, subsequent to an award for reduced earning capacity, a change occurs which either increases or decreases the worker’s earning capacity. Hence, the comparison is between the original lost earning capacity determination and the allegedly altered state of the worker’s earning capacity. However, the same principles of equity and fairness operate in this context to require that the comparison of the new earning capacity determination to the original earning capacity determination be based upon the same components. Thus, if the evidence shows, as it does in this ease, that the original award was based solely upon base rate pay even though the worker was receiving earnings from other sources as well, then the increased earnings must be measured on the same yardstick by only taking into consideration the base rate pay and any other earnings which accrue to the worker outside of the pre-existing factors. See A.R.S. § 23-1044(F). If nothing has changed in Laker’s job requirements or in his capability to perform that job and the sole basis of the rearrangement is that a shift differential is being paid to him now, as it was before, then this alone does not constitute a “change” warranting a rearrangement of the prior award.
This reasoning is consistent with the well-developed principles of finality and res judicata as they relate to workers’ compensation proceedings. Phoenix Cotton Pickery v. Industrial Comm., 120 Ariz. 137, 584 P.2d 601 (App.1978). Whether the original award should have considered the shift differential pay as a reflection of earning capacity is simply not subject to debate, or alteration.
The next inquiry is whether the administrative law judge did use evidence of shift differential pay to find an enhanced capacity to earn. The carrier contends that:
Whether one utilizes the Consumer Price Index, as did Mr. Baker, or whether one eliminates the shift differential entirely, the result is the same. The difference between $3.81 and $4.17 or $4.23 includes only merit increases and is a valid measure of petitioner’s increased earning capacity subsequent to the July 29, 1981 award.
This statement misses the mark. It is in essence comparing apples and oranges. It is immaterial that the utilization of a consumer price index “roll back” ratio produces the same result as the elimination of a shift differential figure. The key must be that the same factors are applied to the “roll back” ratio as were applied to the original calculation. Here, Mr. Baker based his calculations on Laker’s 1982 wage which included the $.80 shift differential, so that the resulting figure of $4.23 per hour at least partially reflects the shift differential.
*465 The only other evidence in the record, the Industrial Commission memorandum, calculates rolled back earnings using the shift differential as well. The carrier suggests that if the shift differential is subtracted from the Industrial Commission’s formula, the result is $4.23 — the same 1979 hourly wage reached by the expert. While this may be true, there is simply no evidence in the record as to what a consumer price index ratio would yield if Laker’s wage, less the shift differential, were the basis of the calculation. Nor can this court speculate as to what the evidence would show if another formula had been used. We find that the administrative law judge improperly considered the shift differential in arriving at the new earning capacity and accordingly the award granting rearrangement is set aside.
PETITION WITHIN ONE YEAR
Laker argues that A.R.S. § 23-1047(D) which imposes a duty on recipients of compensation benefits to report all earnings for the prior twelve month period on the anniversary date of the award was intended to preclude a carrier from petitioning the court for rearrangement within the same year of the original award. This argument is totally without merit. The statute provides a procedure for reporting earnings and does not affect a carrier’s or claimant’s right to seek rearrangement under A.R.S. § 23-1044(F).
Award set aside.
KLEINSCHMIDT, P.J., and GREER, J., concur.

. F. For the purposes of subsection C of this section, the commission shall, in accordance with the provisions of § 23-1047 when the physical condition of the injured employee becomes stationary, determine the amount which represents the reduced monthly earning capacity, and upon such determination make an award of compensation which shall be subject to change in any of the following events:
******
2. Upon a showing of a reduction in the earning capacity of the workman arising out of such injury where there is no change in his physical condition, subsequent to the findings and award.
3. Upon a showing that his earning capacity has increased subsequent to such findings and award.