227 P.2d 230

## WHYTE v. INDUSTRIAL COMMISSION et al.

No. 5384.

Supreme Court of Arizona.

Jan. 29, 1951.

**340**

Minne & Sorenson, Roger J. Blake, Jennings, Strouss, Salmon & Trask, and J. A. Riggins, Jr., all of Phoenix, for petitioner.

H. S. McCluskey, Phoenix, for respondent Industrial Commission of Arizona. Robert E. Yount and Donald J. Morgan, Phoenix, of counsel.

PHELPS, Justice.

On March 10, 1942, Bill Whyte, Jr., petitioner herein, was seriously injured by accident while in the employ of Twaits-Morrison-Knudsen & Webb who were then engaged in the construction business in Arizona. The injuries sustained were multiple and among other things resulted in the amputation of his left leg and a substantial loss in the use of his right leg. At the time of the injury petitioner was employed as an iron or steel worker earning an average wage of $241.20 per month.

Reports of the injury were filed with the commission by two physicians on March 16, 1942. A report by the employer was promptly made and claim for compensation was filed with the commission by the petitioner on March 25, 1942. Petitioner was hospitalized and furnished adequate medical and surgical attention. This service included the furnishing of a prosthesis for the left leg.

On March 28, 1947, the commission made its findings and award which found that petitioner was "entitled to compensation for temporary disability from March 11, 1942 through March 14, 1947, in the sum of $10,180.90" (the finding does not say whether the disability is total or partial). It further found "that said injury also caused a permanent partial disability equal to 100% of a total disability" and entitled him "to compensation therefor in the sum of $156.78 monthly until further order of the commission." Then the commission proceeded to award petitioner accident benefits, compensation in the sum of $10,-180.90, all of which had then been paid except the sum of $5.56 and "the additional sum of $156.78 monthly until further order of the commission, the first payments to be made on April 14, 1947."

The Allison Steel Company had employed petitioner for several years prior to his injury and due to labor shortages during the war emergency had temporarily loaned him together with other employees to Twaits-Morrison-Knudsen & Webb only a short time before the accident occurred.

In April, 1947, the Allison Steel Company employed petitioner as a timekeeper because he had worked for them for several years prior to his injury and because of the fact that his father had been employed by them for many years. But the evidence is clear regardless of the considerations prompting the employment originally that petitioner has fully performed the duties required of a timekeeper for the company. From the date of his employment up to and

through September, 1949, petitioner's average wage was the sum of $223.50.

During October, 1949, petitioner was having some difficulty with the prosthesis he was wearing due to a shrinkage in the stump of his leg and on October 17th, 1949, he filed a motion with the commission to reopen his award for the purpose of petitioning that he be furnished a new prosthesis. Upon investigation the commission, for the first time, discovered petitioner was employed and issued its order directing him to show cause why his case should not be reopened for the purpose of determining if further surgery or a new prosthesis were necessary and why the award of March 28, 1947, should not be amended and supplemented to determine future loss of earning capacity based upon new developments.

The commission conducted its hearing thereon on the date fixed in the order and later upon application of petitioner heard further evidence on the matters under consideration and on May 16, 1950, renderd its decision upon rehearing and order to show cause affirming its finding of fact 1, 2, 3, 4, 5 and 6 of March 28, 1947. It then proceeded to recite its No. 7 findings of fact of said date, and undertook to explain why it made such a finding. A number of other findings of fact were made but we believe the only other findings material to the determination of the issues here are that, at the time of petitioner's injury, his average monthly wage, as an iron or steel-worker, was $241.20 while at that time the average monthly wage of a timekeeper was $165; and that the average monthly wage of petitioner as a timekeeper from April 1947 through September 1949 was $223.50.

Based upon its findings the commission made its award for temporary total disability from March 28, 1947, through November 29, 1949 of $156.78 per month and compensation for a permanent partial disability at the rate of $9.74 from November 30, 1949 until further order. Petitioner brings this case here on certiorari and presents 9 separate assignments of error, all of which can be boiled down into two primary propositions of law:

1. Is the finding of fact of March 28, 1942 "that said injury caused also a permanent partial disability equal to 100% of a total disability and entitles said applicant to compensation therefor in the sum of $156.78 monthly until further order of the commission." a finding of permanent total disability and if so, is it res judicata?

2. If it is not, did the commission use the proper basis of earnings for computation of compensation to which petitioner is entitled?

In spite of the fact that this court since the case of Zagar v. Industrial Commission, 40 Ariz. 479, 14 P.2d 472 has repeatedly called the attention of the commission to the fact that a finding of disability is invalid unless it designates whether it is total or partial, temporary or permanent,

342

its findings of March 28, 1947, in this case not only fail to comply with the decisions of the court in that respect but employed language so ambiguous that we are burdened with the task of endeavoring to discern its meaning which adds materially to the labors of the court in industrial cases, which under the most favorable circumstances are not easy of solution.

■ The finding "that said injury caused a permanent partial disability equal to 100% of a total disability" is incongruous and unintelligible. If it is equal to 100% of total disability it is a total disability, not a partial disability. And if we were to consider this portion of the finding alone we would be compelled to hold that the commission intended to find "a total disability." But in the absence of a finding to that effect we could not say whether it was "a temporary total disability" or "a permanent total disability" and under the previous rulings of the court first laid down in the Zagar case, supra, in the absence of other indicia of intention we would be constrained to declare the finding invalid. The portion of the finding "that said injury caused a permanent partial disability" constitutes a part of a printed form and the words "equal to 100% of a total disability" are typewritten. Standing alone the latter would control in the case of a conflict in the printed and typewritten portions. But when we consider the portion of that finding (all of which is typewritten except the figures $156.78) which reads,

"and entitles said applicant to compensation therefor in the sum of $156.78 monthly" and then followed in typewriting by the words "until further order of the commission" we are convinced that the commission by said finding did not intend that such "total disability" was considered by it to be "permanent." The limitation "until further order of the commission" unequivocally refutes its permanency. If the court intended to find a total permanent disability" the law made it mandatory upon it to make its award for life. Therefore, construed as a whole, we believe it inescapable that the finding of the commission above is that the petitioner had suffered a "temporary total disability."

■ The award of March 28, 1947 is therefore not res judicata. Having reached the conclusion that petitioner was found by the commission on March 28, 1947, to have suffered a "temporary total disability" and it appearing from the record that up until that time petitioner had not performed any work whatever, under the rule laid down in the case of Kennecott Copper Corp. v. Industrial Commission, 62 Ariz. 516, 158 P.2d 887, 892, the commission had the authority to continue petitioner in the "temporary total disability" classification until some definite evidence was procured to determine what his earning capacity would be. This it apparently did.

The next question is: Did the commission use a proper basis in computing the compensation due petitioner in a per-

manent partial disability classification? In arriving at its compensation the commission simply allowed petitioner 55% of the difference between his average monthly wages of $223.50 received from April 1947 through September 1949 and his average monthly wage of $241.20 received by him at the time of his injury. We do not believe this to be the correct basis upon which to predicate such compensation.

The question of whether the formula used by the commission is correct must of course be determined by an ascertainment of the legislative intent as gathered from section 56–957 (c), A.C.A. 1939 here under consideration which provides in so far as we are concerned that: " * * * where the injury causes partial disability for work the employee shall receive, during such disability, compensation equal to fifty-five (55) per cent of the difference between his average monthly wages before the accident and the monthly wages he is able to earn thereafter, * * * "

In arriving at such intent we will endeavor to apply the ordinary rules of statutory construction which we find unnecessary to repeat here. By clear and unmistakable language the legislature has fixed the average wage of an injured employee as of the date of his injury as the measure of his earning capacity prior to his injury. It then provides for compensation of 55% of the difference between what he was earning prior to the injury "and the monthly wages he is able to earn thereafter".

Let us pause here to observe that the legislature did not say that the loss in earning capacity was to be based on the difference between his average monthly wages before the injury and the *wages received* by the injured employee thereafter, but declared it should be based on the difference between the average monthly wages of such employee before the accident and the *monthly wages he was able to earn thereafter.* There may be a vast difference between what an employee receives as wages and what he actually earns. The latter has a direct relation to the services he performs and the wealth he produces for his employer while the former may be wholly unrelated to production. We have so often held that compensation of an injured employee must rest squarely upon a diminished earning capacity that citations of authorities are unnecessary. This is in complete harmony with the language of the statute above quoted.

Some confusion apparently has arisen in the mind of the commission as to the meaning of the term "and the monthly wages he is able to earn thereafter". This confusion, no doubt, arises out of its interpretation of the word "thereafter". Webster's Unabridged Dictionary 2d Ed. defines "thereafter" as meaning "after", "after that". Standing alone, in the absence of some limitation such as "immediately thereafter" the view that it may be intended to extend indefinitely may be justified but when we consider the con-

text of the act and the end sought to be achieved such a construction cannot be justified.

The intent of the legislature in using the language under consideration was to furnish the commission with a yardstick by which it could with reasonable accuracy determine the diminished earning capacity of an injured employee and by the use of which no inequalities, inequities or injustices could arise. To do this it, of course, intended that the length of the yardstick to be used should at all times remain constant. It follows then that the legislature did not intend that wages received two, five or ten years after an employee has sustained an injury (depending upon when the injury becomes stationary), regardless of changes in business conditions during those periods where all wages have doubled, due to a business boom, or cut in two due to business depression, should be used by the commission as a part of its formula in ascertaining the loss of his earning capacity.

■ The court will take judicial notice of the fact that since March 1942 wages generally have continuously spiralled upward due to the war and post-war business boom. In so far as the record in this case discloses the duties of the timekeeper of the Allison Steel Company in 1947 and 1949 were exactly the same as they were in 1942 compelling the conclusion that the increase in the wages of such timekeeper was due solely to the post-war business boom, or in other words, to a change in economic conditions.

To use the wage scale of March 1942 as the yardstick by which petitioner's earning capacity prior to his injury is to be measured and then use the wage scale of November, 1949 as the yardstick by which his earning capacity after his injury is to be measured is comparable to the use of a 3-foot yard stick for measuring his earning capacity before the accident and a 5-foot yard stick for measuring his earning capacity after the accident. Such a process would be incongruous, inequitable and unjust. Its application would result in an absurdity, thus violating one of the cardinal rules of statutory construction.

For illustration et us assume that at the time petitioner was injured, two other steel workers were involved receiving similar injuries and that all three employees were placed on temporary total disability rating, as was this petitioner. In March 1942 they were each receiving $240 average monthly wages. For convenience let us refer to them as A, B and C.

The injuries sustained by A became stationary in 1943; the injury sustained by B became stationary in 1946; the injury sustained by C became stationary in 1949. Neither were, or are now able to return to their original employment as steel workers but the employer did reem-

ploy them when they were able to return to work. Their job was to keep the production line clear at machines in his factory turning out finished products. No mechanical knowledge of the machine was necessary. The work required close attention but no activity that necessitated the use of the injured parts of the body. The machines were all alike and each turned out the same quantity of the finished commodity. The volume of production of each machine remained the same from 1942 through 1949. Their work was exactly the same and each did his work entirely satisfactorily.

At the time of the injury in 1942 these production line jobs paid $125 per month. At the time A returned to work in 1943 production line jobs still paid $125 per month. The commission allowed A as compensation 55% of the difference between $240 per month, the amount he was receiving when injured, and $125 per month, the amount he was able to earn when he returned to work, or 55% of $115 amounting to $63.25. In 1946 when B returned to work production line jobs, due solely to a change in business conditions, paid $200 per month and the commission awarded B 55% of the difference between $240 per month, the amount he was earning when injured, and $200, the amount he was able to earn in 1946, or 55% of $40 amounting to $22.20; at the time C returned to work the wages of production line workers were $250 per month, also due entirely to further inflationary trends. The commission denied C compensation upon the ground that he was earning more in 1949 than he did at the time of the injury. A, B and C were all given a permanent partial disability rating. If we used the same illustration on a declining wage scale we find the converse to be equally absurd, inequitable and unjust. By the application of this formula one can better appreciate what Voltaire meant when he satirically said "All animals (men) are equal but some animals(men) are more equal than others."

It is certain the legislature intended no such result. The diminished earning capacity of petitioner occurred the moment he sustained his injury. It is only the extent of the loss of his earning capacity which remained undeterminable and this continues until the healing processes of nature renders the condition of his injuries stationary so that the character of work he is able to do, if any, may be ascertained. As above stated the law clearly fixes his earning capacity immediately prior to his injury as one of the predicates for determining the loss in his earning capacity. We think it reasonable and logical to conclude therefore that in defining the other predicate as "the monthly wages he is able to earn thereafter" the word "thereafter" was intended to mean and must of necessity be construed to mean, "immediately thereafter" and that the second predicate based upon his new

employment must be determined by ascertaining what wages others in the same or most similar class in the same or most similar employment in the same or similar locality were receiving at the time the injury occurred. This is the only construction that will yield an unvariable result regardless of surrounding circumstances, and harmonizes with all of the authorities that changes in economical conditions may not be permitted to affect the amount of compensation due an injured employee based upon loss of earning capacity. Capone's Case, 239 Mass. 331, 132 N. E. 32; Durney's Case, 222 Mass. 461, 111 N.E. 166; Peak v. Nashua Gummed & Coated Paper Co., 87 N.H. 350, 179 A. 355. The authorities seem to agree that the employee in common with all others must bear the loss resulting from a business depression. It follows as a necessary corollary thereto that the employee in common with all others is entitled to the enjoyment of benefits resulting from general wage increases due to eras of great prosperity in the nation. Therefore a reduction or increase in earning capacity occasioned by general business conditions and not due to the injury cannot be considered by the commission as a basis for fixing or adjusting the compensation of an injured employee.

This interpretation is in complete harmony with the rule in Steward v. Industrial Commission, 69 Ariz. 159, 211 P.2d 217, to the effect that compensation may be adjusted upward when there is shown to be a loss in earning capacity due solely to the injury sustained or adjusted downward when the earning capacity has increased due solely to the increased efficiency or ability of the *injured* person. The use of the term "earning capacity" as used in the Steward case and as defined in the instant case excludes the consideration by the commission of any increase or decrease in wages due solely to business booms or depressions. The findings of the commission as to the loss of earning capacity and the award based thereon is res judicata and can only be adjusted upward or downward when there is shown to be either a change in the physical condition of the injured employee or a change in earning capacity by reason of the conditions above mentioned.

The true basis for computing compensation in the instant case is 55% of the difference between $241.20, the average monthly wages earned by petitioner as a steelworker at the time of his injury and $165, the wages earned at that time by timekeepers then employed by the Allison Steel Company which work petitioner is now able to do. This formula, however, applies only in cases where the increase or decrease in wages is due solely to a change in economic conditions that occurs between the date the injury takes place and the date the injury becomes stationary, as in this case. It has no application where the difference in wages during that period is

due to a change in the physical condition of the injured employee directly and proximately resulting from said injury or due to the peculiar or special efficiency of such employee. This construction of the statute greatly simplifies its administration and will obviate the necessity of the commission considering applications for readjustment of compensation due solely to business booms or depressions. It will certainly impose no undue burden upon the commission to ascertain the wages paid at the time of his injury for the kind of work the injured employee is able to perform when his injury becomes stationary. The commission furnished that information to this court in the instant case.

For the foregoing reasons the award is set aside.

STANFORD and DE CONCINI, JJ., concur.

LA PRADE, Justice (dissenting).

I am compelled to dissent from the majority opinion. I cannot agree with the disposition made nor the reasons given for setting the award aside. However, I do agree with the conclusion of the majority and subscribe to the reasons given therefor in the determination that the effect of the Industrial Commission award was that petitioner had suffered a "temporary total disability" and that the award so construed was not res judicata.

I believe that there is no justification in law for misconstruing the plain provisions of subsection (c) of Section 56-957, A.C.A. 1939.

In subsection (a) of this section, provision is made for the amount of compensation that will be paid for temporary partial disability.

Subsection (b) fixes the amount of compensation that will be paid for disability deemed "permanent partial" (this includes the so-called scheduled injuries).

Subsection (c) relates to the so-called "odd lot" disabilities for which no specific provision is made in subsection (b). This subsection (c) in its entirety reads as follows: "(c) In cases not enumerated in subsection (b), where the injury causes partial disability for work the employee shall receive, during such disability, compensation equal to fifty-five (55) per cent of the difference between his average monthly wages before the accident and the monthly wages he is able to earn thereafter, but the payment shall not continue after the disability ends, or the death of the injured person, and in case the partial disability begins after a period of total disability, the period of total disability shall be deducted from such total period of compensation."

In the instant case the commission was faced with the problem of determining the amount of compensation to be paid to the petitioner who had not suffered one of the

348

so-called "scheduled injuries". The specific language of this section, so far as applicable to him, is that " * * * where the injury causes partial disability for work the employee shall receive, during such disability, compensation equal to fifty-five (55) per cent of the difference between his average monthly wages before the accident and the monthly wages he is able to earn thereafter, * * *." This identical language appeared at the time of the first enactment of the law providing for workmen's compensation insurance, the same being Chapter 83, Session Laws of 1925. This particular subsection under scrutiny appeared as subdivision (w) of paragraph numbered 2 of subsection (c) of section 70.

This statutory formula has been repeatedly passed upon by this court and prior to now it has never given any concern as to its meaning. The language is free of any ambiguity or uncertainty. The compensation that shall be paid is equal to fifty-five per cent of the difference *between his average monthly wages before the accident and the monthly wages he is able to earn thereafter.*

What does "thereafter" refer to? It must of necessity refer to that undetermined time in the future when the injured workman will return to work and earn wages. It is only when he attempts to return to work or actually returns to work that the workman can discover what his capabilities are and what his chances are for securing employment and retaining it. The majority opinion now states that the context of the Act demands that the word "thereafter" must be restricted to mean "immediately thereafter". This of course creates an absurd situation because no workman seriously injured is able to return to work immediately. The petitioner in this case was not able to return to work for five years. If the amount of compensation to be paid to petitioner is to be fifty-five per cent of the difference between his average monthly wages before the accident and what he was able to earn immediately after the injury, then he should receive fifty-five per cent of $241.20, or $156.78.

The majority opinion has now made this subsection read as follows: "Where the injury causes partial disability for work the employee shall receive, during such disability, compensation equal to fifty-five (55) per cent of the difference between his average monthly wages before the accident and the monthly wages he is able to earn thereafter. *which shall arbitrarily be fixed at the average wage paid for such employment or job or similar employment if such job or employment was in existence at the time of his injury.* (Italics new)" This opinion is to the effect that the legislature intended and contemplated that awards were to be made in purchase power dollars. Why did the applicant return to work? Manifestly for the purpose of earning wages. The opinion is to the effect that no attention shall be paid to what the

employee actually earns upon being re-employed, but that consideration shall be given only to the amount of the wages that were paid for this new job back at the *time* of the accident.

If the court is to rewrite the law (by construction), it occurs to me that it would be much more sensible to announce that in so far as wages are to be considered in determining the loss of earning capacity, such loss should be measured by the difference between *present* wages of the employee and *present* wages of those engaged in the employee's former occupation. This was the essence of petitioner's proposition of law. In arguing this proposition, in his brief, petitioner said: "In order to arrive at a minimum award in this matter the Commission has used the high figure in plaintiff's present employment and the low figure for structural iron workers. It seems logical to us that consistency at least would require that the percentage of disability be computed upon the basis of fifty-five per cent (55%) of the difference in the monthly wage of an office worker and steel worker at the present time *or between those two at the time of injury."* (Emphasis supplied.) Please note the last nine italicised words. These words are the genesis of the majority opinion. No proposition of law was presented promulgating this idea, nor was it argued; still, these nine words are the basis for this court rewriting the statute and overruling all of its prior declarations on this identical formula.

The illustrations contained in the majority opinion with reference to employees A, B, and C, supposedly receiving similar injuries and all given a temporary total disability rating and returning to work at different times, with differing allowances resulting therefrom, are fallacious and have no foundation in fact. The presumption is that the commission is "on its toes", so to speak, and keeps in touch with the current earnings by recipients of disability awards. Hence it should know at all times what wages B receives after he returned to work. Under the illustration given, A would then be receiving the same wages. A's compensation at that time would be reduced to that given to B. The same reasoning is applicable to the illustration given with reference to C. That the commission attempts to keep abreast of its awards and the earnings of the recipients of compensation is demonstrated in this case. When the petitioner came before it to ask for additional allowances for a new prosthesis, the commission discovered that the petitioner was employed and earning wages in the sum of $223.50 per month. This information immediately prompted the calling of a hearing to determine whether the amount of his award should not be reduced. Referring to the petitioner as A, and again reverting to the illustrations contained in the majority opinion, if B, who was injured at the same time that A

was injured, returned to work at the time that this adjusted award was made, he (B) would receive the same amount of compensation as A would receive on his reduced award.

I mentioned above that the statutory formula has been repeatedly passed upon by this court and that it had never given any concern. In Kilpatrick v. Hotel Adams Co., 1933, 42 Ariz. 128, 22 P.2d 836, 837, the court was considering this identical statutory formula and there said (Ross, C. J.): "* * * Hereunder it is made the duty of the commission to determine *how much the petitioner is able to earn since his injury,* using the formula prescribed, or so much thereof as is applicable to the facts, and to award him compensation equal to 55 per cent. of the difference *between that and what he was earning before the accident * * *."* (Emp. supplied.)

In Savich v. Industrial Commission, 39 Ariz. 266, 5 P.2d 779, 780, this court said (Ross, J.): "* * * The word 'disability,' as used in our Compensation Act, does not mean disablement to perform the particular work petitioner was doing at the time of his injury, but *refers to injuries which result in impairment of earning power generally. * * *"* (Citing cases.)

Of course, this statement is not persuasive upon the majority because they are not interested in his present earning capacity or the amount that he actually earned in his new job but only in the amount of wages paid for his present employment at the time of his injury. In Six Companies, Inc., v. Industrial Commission, 42 Ariz. 501, 27 P.2d 678, this court said (Ross, C. J.): "* * * The employee's average monthly wage at the time of his injury is one of the essential factors in arriving at an award, *and another is the average monthly wage he is able to earn after his injury.* These must be found by the commission, which shall then award the employee 55 per cent. of *the difference between the two.*

"What Grant's wages, either before or *after injury,* were we cannot determine from the record and it is quite apparent they were not found by the commission. * * * (Emphasis supplied.) and in Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160, 161, we said (Udall, J.): "The statute just quoted states explicitly of what the award shall consist. It is 55% of the difference between the claimant's monthly wages before the accident and the monthly wages he is *'able to earn'* thereafter. (Citing cases.)" (Emphasis supplied.)

This section again was under consideration in Kennecott Copper Corp. v. Industrial Commission, 1945, 62 Ariz. 516, 158 P.2d 887, 892. There we said (Morgan, J.): "(15) There may be some difficulty in determining what monthly wages the applicant will be able to earn. This is a duty, however, which the law imposes upon the commission. *It is under no compulsion to make an award until it is able to*

*determine in some way what the wages of the employee will be.* \* \* \*" (Emphasis supplied.)

In Standard Acc. Ins. Co. v. Industrial Commission, 1947, 66 Ariz. 247, 186 P.2d 951, 953, which opinion was concurred in by Justice Stanford, we said that (LaPrade, J.): "'\* \* \*, where the injury causes partial disability for work the employee shall receive, during such disability, compensation equal to fifty-five (55) per cent of the difference between his average monthly wages before the accident and the monthly *wages he is able to earn thereafter* \* \* \*.'" and particular emphasis was laid on the words "wages he is able to earn thereafter".

In our case of Matlock v. Industrial Commission, 1950, 70 Ariz. 25, 215 P.2d 612, 615, authorized by Justice De Concini, there appears this language: "(12) \* \*. His loss of earning power, then, would be the difference between the wages he was earning at the time of his injury *and the wages the commission determines he could earn at the work he is able to do at the time of the award regardless of whether or not he is able to obtain work.* \* \* \*" (Emphasis supplied.) This opinion was concurred in by Justices Stanford and Phelps.

And in Ocean Accident & Guarantee Corp. v. Kilpatrick, 1934, 43 Ariz. 321, 30 P.2d 839, the situation under consideration was spelled out arithmetically. The question there was what was the amount of compensation to be paid to the injured employee. His wages at the time of the accident were $150 per month. His earning power had been reduced seventy-five per cent or from $150 per month to $37.50, a difference of $112.50. In this behalf the court said: "\* \* \* His compensation, according to the formula prescribed in subdivision (w), par. 2, part C, § 1438, Revised Code of 1928, is 55 per cent. of the difference between his earning power before his injury and his earning power after his injury, which would be $61.88 instead of $73.13, as calculated. \* \* \*" The section referred to in the quotation is the identical section now under consideration.

In view of the repeated and uniform interpretation of the plain language of this section, it seems to me that it is less than charitable to say, as does the majority, that "some confusion apparently has arisen in the mind of the commission as to the meaning of the term 'and the monthly wages he is able to earn thereafter.' This confusion, no doubt, arises out of its interpretation of the word 'thereafter'. \* \*" What the majority are saying is that this court for the past eighteen years has been confused, including all of the members signing the majority opinion.

I seriously question the judiciousness at this late date of evolving a new economic philosophy and attributing to it "legislative intention" of the year 1925. The award should be affirmed.

UDALL, Chief Justice (concurring in dissent).

I concur wholeheartedly in Justice LA PRADE'S well-reasoned dissent.