739 P.2d 829

**OAK INDUSTRIES,
Petitioner Employer,**

**Aetna Casualty & Surety Company,
Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,**

**Martin Menter, Respondent Employee.**

**No. 1 CA–IC 3560.**

Court of Appeals of Arizona,
Division 1, Department A.

June 23, 1987.

---

Jones, Skelton & Hochuli by Calvin Harris, Phoenix, for petitioner employer and carrier.

Dennis P. Kavanaugh, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Wisniewski, Surrano & Fendon by Don A. Fendon, Phoenix, for respondent employee.

## OPINION

CONTRERAS, Judge.

This is a special action review of an Industrial Commission award for permanent partial disability benefits based on adjusted gross income (gross income less unreimbursed business expenses). The sole issue is whether the deduction of unreimbursed business expenses is permitted in determining claimant's post-injury earning capacity. We conclude that in the context of the present case, it is permitted and therefore affirm the award.

The facts are undisputed. Before the industrial injury, the respondent employee (claimant), a salesman, earned a salary plus commission. During the month before the industrial injury, his gross monthly income exceeded $6,000. Additionally, claimant's employer provided him with a company van and paid for fuel and repairs. There is no evidence that claimant had other unreimbursed business expenses.

In December 1981 claimant was injured in a work-related auto accident. The claim was accepted and claimant's average monthly wage was set at the statutory maximum of $1,325. *See generally* A.R.S. § 23–1041(E).

On February 21, 1985, the Industrial Commission issued an administrative Findings and Award for unscheduled permanent partial disability. This Award determined that claimant had sustained a 7% general physical functional disability, but awarded no permanent partial disability benefits due to the fact that claimant had reported earnings in excess of the maximum average monthly wage. Claimant filed a timely Request for Hearing on this administrative Award and a hearing was held.

At the scheduled hearing, it was established that claimant was restricted to part-time sales work and that he was being paid a straight commission. In his post-injury position, unlike his pre-injury position, all business expenses were *unreimbursed.* The administrative law judge determined in finding No. 5 that claimant's adjusted gross income (gross income less unreimbursed business expenses) between November 1984 and May 1985 reasonably represented his post-injury earning capacity because "to do otherwise would simply penalize the applicant by placing him in a different position than other similarly situated injured workers who typically do not incur similar expenses while earning income." Utilizing the adjusted gross income approach, the administrative law judge found that claimant could reasonably expect to earn, at the present time, the sum of $815 per month.[1] Based upon claimant's previ-

1. Claimant netted $5700 from November 1, 1984, through May 31, 1985. This amount di-

ously established average monthly wage of $1325 and pursuant to the provisions of A.R.S. § 23–1044(C), (D), and (F), claimant was awarded compensation for unscheduled permanent partial disability in the sum of $280.50 per month. On administrative review, petitioners argued that this deduction for unreimbursed business expenses conflicted with *Hobbs v. Industrial Comm'n*, 23 Ariz.App. 422, 533 P.2d 1159 (1975). The administrative law judge affirmed the award, and this special action followed.

On review to this court, petitioners again assert that the award conflicts with *Hobbs* and that it was improper to deduct claimant's unreimbursed business expenses from his post-injury gross earnings, when his pre-injury average monthly wage was based upon gross earnings. We disagree.

*Hobbs* concerned the average monthly wage of a migrant worker who had claimed an income tax deduction for unreimbursed travel expenses. The Industrial Commission reduced the worker's average monthly wage by the amount of the claimed deduction. Prior case law required the exclusion of reimbursed expenses from the wage base. *See, e.g., Pettis v. Industrial Comm'n*, 91 Ariz. 298, 372 P.2d 72 (1962); *Moorehead v. Industrial Comm'n*, 17 Ariz.App. 96, 495 P.2d 866 (1972). This court distinguished the prior authority and set aside the award:

> Unlike the claimants in *Moorehead*, supra, and *Pettis*, supra, the petitioner herein received no allowances or reimbursements. He was simply paid a wage, and that wage was comparable to the wage received by others doing the same or similar work. Accordingly, we hold that a claimant who incurs travel expenses by reason of his employment, but receives no reimbursement therefor from his employer, is entitled to have his average monthly wage computed on the basis of his earnings undiminished by the sum spent on travel expenses, irrespective of whether he claims or is entitled to a deduction for travel expenses on his federal income tax return.

vided by the seven months involved represents

*Hobbs v. Industrial Comm'n*, 23 Ariz.App. at 423, 533 P.2d at 1160.

The present case concerns post-injury *earning capacity*, not pre-injury *average monthly wage*. But earning capacity and average monthly wage are reciprocal. To compare them accurately, they must be measured by the same standard.

> The intent of the legislature ... was to furnish the commission with a yardstick by which it could with reasonable accuracy determine the diminished earning capacity of an injured employee. ... *To do this it, of course, intended that the length of the yardstick to be used should at all times remain constant.*

*Whyte v. Industrial Comm'n*, 71 Ariz. 338, 344, 227 P.2d 230, 233 (1951) (emphasis added); *accord, e.g., Arizona Public Service Co. v. Industrial Comm'n*, 16 Ariz. App. 274, 279, 492 P.2d 1212, 1217 (1972) (assessment of lost earning capacity requires "yardsticks of the same length").

Claimant argues that the equal measure rule should not be applied to reduce compensation. This result, the argument continues, would conflict with the remedial purpose of workers' compensation. *See generally, e.g., Senor T's Restaurant v. Industrial Comm'n*, 131 Ariz. 360, 641 P.2d 848 (1982). We disagree that this remedial purpose justifies a double standard. *Whyte* itself recognizes that the rule applies neutrally. *See Whyte v. Industrial Comm'n*, 71 Ariz. at 344, 227 P.2d at 233 (post-injury wages must be adjusted for inflation or deflation).

Claimant also interprets *Hobbs* more narrowly than petitioners. He argues that the only requirement is a wage base that is comparable to the wage base of other workers doing similar work. He contends the current award therefore satisfies *Hobbs* because the administrative law judge found that claimant's adjusted gross income was the comparable wage base.

The comparison to other workers was one justification for requiring an unreduced average monthly wage in *Hobbs*. *See Hobbs v. Industrial Comm'n*, 23 Ariz.

$815 per month.

App. at 423, 533 P.2d at 1160. But we disagree that this comparative standard satisfies the equal measure rule. If a worker's gross income determines his average monthly wage despite actual unreimbursed business expenses, then the same measure must apply to his post-injury earning capacity. To illustrate this point, assume that the worker in *Hobbs* returned to part-time farm labor and again had travel expenses. Local laborers, in contrast, did not have travel expenses. If the only requirement were similar treatment, then adjusted gross income would determine the migrant worker's post-injury earning capacity even though gross income determined his average monthly wage. The equal measure rule prohibits this double standard.

Petitioners' argument, however, requires a broader prohibition. Our conclusion concerning the equal measure rule is conditional: if *Hobbs* applied to the average monthly wage, then the same standard must apply to post-injury earning capacity. But *Hobbs* affects the average monthly wage only if the worker had pre-injury unreimbursed business expenses. *Hobbs* therefore did not affect claimant's average monthly wage because he did not have these expenses.

The dispositive question, therefore, is whether *Hobbs* applies unconditionally. Petitioners, in their opening brief, assert that it does.

> Under *Hobbs, supra,* gross wages is the standard upon which an average monthly wage must be based even though the employee has incurred expenses in earning those wages and claimed an income tax deduction. Thus, in order to have 'yardsticks of the same length' post-injury earnings must also be based upon gross wages, regardless of whether the employee has incurred expenses while earning those wages.

In our opinion, this unconditional application of *Hobbs* violates, rather than conforms to, the equal measure rule. The purpose of this rule is to ensure a fair comparison of pre-injury and post-injury earnings. The unconditional application of *Hobbs* would require a comparison of claimant's pre-injury and post-injury gross incomes. But these comparative incomes are not commensurate. This is so, for the reason that, in the matter presently before us, the terms of claimant's employment changed after his industrial injury. Now he, rather than the employer, paid the business expenses. Because of this change, the only fair comparison is between pre-injury gross income and post-injury adjusted gross income.

We find support for this conclusion in *Ihle v. Industrial Comm'n,* 14 Ariz.App. 463, 484 P.2d 232 (1971). In that case a worker lived and worked in a small rural community. After his industrial injury, he could no longer work there but found work in a city located some fifty miles away. This court concluded that the Industrial Commission should consider these travel expenses in determining the worker's post-injury earning capacity:

> ... [U]nusual post-injury employment expenses which were not inherent in the workman's pre-injury employment may likewise have the practical affect of diminishing the actual post-injury earning capacity on a comparative basis. Because of these post-injury employment expenses, the actual post-injury earnings may, when considered alone, present a distorted view of the workman's post-injury earning capacity as compared to his pre-injury average monthly wage.

*Ihle v. Industrial Comm'n,* 14 Ariz.App. at 465, 482 P.2d at 234.

In the present case, the changed terms of employment result in a distorted view of the worker's post-injury earning capacity as compared to his pre-injury average monthly wage. We therefore conclude that, in the context of the case presently before us, the reduction from gross income to adjusted gross income is permitted in order to more accurately ensure a fair comparison of pre-injury and post-injury earnings. We accordingly affirm the award.

GRANT, P.J., and FIDEL, J., concur.