858 P.2d 652

**Donna ELIAS, Petitioner Employee,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Yuma Regional Medical Center, Respondent Employer,**

**Hartford Insurance, Respondent Carrier.**

**No. 1 CA–IC 91–0140.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 3, 1992.

Reconsideration Denied Oct. 27, 1992.

Review Denied Sept. 30, 1993.

Delaney & Melkonoff by Edgar M. Delaney, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, Industrial Commission of Arizona, Phoenix, for respondent.

Jones, Skelton & Hochuli by Calvin Harris, Phoenix, for respondent employer and respondent Insurance Carrier.

OPINION

VOSS, Judge.

This is a special action review of an Arizona Industrial Commission award for no loss of earning capacity. One issue is presented: whether suitable and reasonably available full-time work represents petitioner employee's ("claimant's") earning capacity when she historically voluntarily worked only part-time and her date of injury average monthly wage was based on her part-time earnings.

In December 1988, claimant injured her back while working as nurse for respondent employer ("YRMC"). Claimant worked only two eight hour days a week for the YRMC and earned $15.82 an hour. Respondent carrier ("Hartford") accepted compensability and recommended an average monthly wage of $1,018.63 based on claimant's average part-time earnings during the year before her injury. The industrial commission ("commission") adopted this recommendation. *See generally* Ariz. Rev.Stat.Ann. ("A.R.S.") § 23–1061(F) (1983). Claimant, who was then unrepresented, allowed this notice to become final.

In May 1990, Hartford closed the claim with a permanent impairment to be compensated as an unscheduled disability. The commission subsequently issued an award for permanent partial disability of some twenty percent based on full-time work as a secretary. *See generally* A.R.S. § 23–1047. Claimant retained her current counsel, and protested the interim award.

The YRMC subsequently offered claimant part-time work as a unit secretary on the 3:00 to 11:00 p.m. shift. When claimant refused this offer, YRMC terminated her employment.

Hearings ensued at which claimant and two vocational consultants appeared. Claimant testified that apart from brief full-time employment immediately after her marriage in 1961, she had worked only

part-time as an office worker and then, after completing nursing school in 1980, as a nurse. She explained that her husband's income was adequate and he felt full-time work interfered with family life, but that she wanted the security of her own career if circumstances ever compelled her to earn her own living. She had continued to work part-time to maintain her nursing skills, and she conceded that full-time work was available to her if she had wanted the work. Claimant also explained that she had refused YRMC's offer to work as a unit secretary because working the evening shift would interfere with her family life. Finally, claimant acknowledged that she had not registered with any employment service, but she testified that she had recently applied to work part-time for a home care nursing agency.

Claimant's vocational consultant subsequently testified that claimant had been hired to work sixteen hours a week for the home nursing agency. According to the consultant, however, the hours of work were not guaranteed and claimant would have difficulty working more than two to five hours a day during summer months. He also testified that forty minutes of uncompensated paperwork was required for every hour of work. Claimant accordingly could bill only ten hours a week if she worked only sixteen hours a week.

Hartford's consultant testified that claimant's current employer paid $35.00 an hour for an initial home visit and $21.00 an hour for subsequent time in the home. Based on information from the employer, he concluded that claimant could probably bill sixteen hours a week year round. In that event, claimant would have no loss of earning capacity. He, however, was unaware of any requirement of paperwork. Hartford's consultant also testified that the YRMC would employ claimant as a full-time unit secretary on the evening shift and that several full-time, light-work nursing positions were reasonably available with various employers. Any of these full-time positions would result in no loss of earning capacity.

The administrative law judge ("A.L.J.") then issued the award for no loss of earning capacity. He accepted Hartford's consultant's opinion that several full-time positions were suitable for and reasonably available to claimant. He rejected claimant's argument that because she historically had worked part-time and her average monthly wage was based on her part-time earnings, her post-injury earning capacity must be based on comparable part-time employment:

> The applicant argues that any loss of earning capacity in her situation should be based upon a 16 hour rather than a 40 hour work week. A decision on this issue appears to be one of first impression. The applicant clearly has a work history of essentially part-time employment and accepted the position for the defendant employer on a 16 hour per week basis. This part-time employment was preferred by the applicant who apparently did not need to work but merely wanted to keep her nursing skills current. The issue is whether the applicant's earning capacity should be based on 16 hours per week, the applicant's preference and historical employment, or on 40 hours per week, apparently the usual work per week for which the applicant is physical [sic] able to be employed. Obviously, the argument can be taken to the extreme: Is a 40 hour per week position unsuitable for a worker who normally was employed 35 hours or for a worker employed 55 hours per week?
>
> The goal in determining a loss in earning capacity is to determine whether in a competitive market the applicant can probably sell her services and for how much. The undersigned concludes that the applicant's loss in earning capacity is best determined by considering positions up to and including 40 hours per week positions. The applicant's argument that only 16 hour per week positions should be considered is rejected.

The A.L.J. affirmed the award on administrative review, and claimant then brought this special action.

On review, claimant contends that the A.L.J. improperly found no loss of earning capacity based on full-time employment. She relies on the *Whyte* principle that average monthly wage and post-injury earning capacity are reciprocal and accordingly must be measured by the same standard. *Whyte v. Industrial Comm'n*, 71 Ariz. 338, 344, 227 P.2d 230, 233 (1951) (measuring average monthly wage by constant "yardstick" requires adjustment for inflationary effects on wages); *accord Oak Industries v. Industrial Comm'n*, 153 Ariz. 608, 610–11, 739 P.2d 829, 831–32 (App.1987) (applying *Whyte* to expense reimbursement); *Laker v. Industrial Comm'n*, 139 Ariz. 459, 463–65, 679 P.2d 105, 109–111 (App. 1984) (applying *Whyte* to shift differential); *Arizona Public Service Co. v. Industrial Comm'n*, 16 Ariz.App. 274, 277–79, 492 P.2d 1212, 1215–17 (1972) (applying *Whyte* to overtime and back pay).

Claimant concedes that the current case is of first impression: none of the prior cases applies the reciprocity principle to hours of work. However, she relies on Larson's discussion of average monthly wage to argue that this principle logically extends to hours of work. According to Larson, the average monthly wage of workers who have historically worked part-time and who predictably would have continued part-time employment should be based on their actual part-time earnings. *See* 2 Arthur Larson, *The Law of Workmen's Compensation*, § 60.21(c) (1992) (criticizing contrary case law).

In the current case, claimant never sought nor wanted full-time employment. She accordingly argues that her average monthly wage should have been and actually was based on her actual part-time earnings and therefore that reciprocity requires a part-time post-injury earning capacity.

Hartford answers by denying that reciprocity extends to a voluntary pre-injury restriction to part-time employment. It contends that all injured workers have a duty to mitigate damages. *See, e.g., Hoffman v. Brophy*, 61 Ariz. 307, 314, 149 P.2d 160, 163 (1944). This duty requires a worker to change vocations if suitable work is reasonably available. *Id.; accord* 2 Arthur Larson, *supra*, § 57.22(b) at 10–187. According to Hartford, the duty to mitigate requires a formerly part-time worker to accept suitable and reasonably available full-time work.

We conclude that the reciprocity principle ought to apply to hours of work. Larson discusses *Whyte* with approval, *see* 2 Arthur Larson, *supra*, § 57.32(b), and directly applies the reciprocity principle to hours of work, *See id.* at 10–231 to –233. The current case illustrates the injustice that may result if the average monthly wage is based on part-time employment and post-injury earning capacity is based on full-time employment. Claimant was earning $15.82 an hour when injured. The secretarial work the YRMC offered her, for example, paid only $10.55 an hour, and this figure included a clearly excludable payment for shift differential, *see Laker*, 139 Ariz. at 463–65, 679 P.2d at 109–111. If she has permanently lost the capacity to earn the higher wage, she is entitled to compensation for this loss.

We accordingly set aside the award for no loss of earning capacity based on full-time employment.

KLEINSCHMIDT and TOCI, JJ., concur.