995 P.2d 716

**Jeffrey REAVIS, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Arizona Environmental Management, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 98–0082.**

Court of Appeals of Arizona, Division 1, Department A.

May 6, 1999.

Review Denied March 14, 2000.

Lawrence P. Nicholls, P.C. by Lawrence P. Nicholls, Phoenix, Attorney for Petitioner

Anita R. Valainis, Chief Counsel The Industrial Commission of Arizona, Phoenix, Attorney for Respondent

James F. Crane, Chief Counsel State Compensation Fund by Christopher O. Anderson, Phoenix, Attorneys for Respondents Employer and Carrier

**OPINION**

PATTERSON, Judge.

¶1 This is a statutory special action review of Arizona Industrial Commission (ICA) decisions upon hearing and upon review for no loss of earning capacity. In finding no loss, the administrative law judge (ALJ) considered all post-injury hours of work, including overtime. Petitioner (claimant) concededly routinely worked overtime for respondent employer (AEM), but as a result of his hourly wage, only the first 140 hours were considered to establish a statutory maximum average monthly wage. The issue is whether the equal measure rule required the ALJ to consider either only the first 140 hours of post-injury employment *or* at least to exclude post-injury overtime.

¶2 For the reasons that follow, we conclude that the equal measure rule did not restrict the ALJ from considering claimant's actual hours of post-injury work. We accordingly affirm the award and decision upon review.

¶3 Before summarizing the undisputed facts, we briefly review their general statutory context. The amount of permanent partial disability compensation is fifty-five percent of the difference between the average monthly wage and "the amount which represents ... [an injured worker's] reduced monthly earning capacity resulting from the disability...." Ariz.Rev.Stat. Ann. (A.R.S.) § 23–1044(C).

¶4 Subject to exceptions not applicable here, an injured worker's average monthly wage is computed from the worker's actual earnings. *See* A.R.S. § 23–1041(A), (D); *see also De Galaviz v. Industrial Comm'n,* 61 Ariz. 377, 379, 149 P.2d 837, 837 (1944); *Elco Vet. Supply v. Industrial Comm'n,* 137 Ariz. 46, 47–48, 668 P.2d 889, 890–91 (App.1983), *approved and adopted by* 137 Ariz. 45, 668 P.2d 888 (1983). This computation, however, is limited by statute: "[*I*]*n computing the average monthly wage there shall be excluded from such computation all wages ... in excess of ...* [$2100]." A.R.S. § 23–1041(E)(4) (emphasis added).

¶5 A worker's actual post-injury earnings presumptively establish his or her

residual earning capacity. *See, e.g., Arizona Dep't of Pub. Safety v. Industrial Comm'n,* 176 Ariz. 318, 323, 861 P.2d 603, 608 (1993). This presumption, however, is rebuttable. *Id.* Also, as discussed below, the equal measure rule may restrict consideration of actual post-injury earnings to establish residual earning capacity. *See, e.g., Whyte v. Industrial Comm'n,* 71 Ariz. 338, 343–47, 227 P.2d 230, 232–35 (1951).

### PROCEDURAL AND FACTUAL HISTORY

¶ 6   In the current case, while working for AEM, claimant earned $15.00 an hour and worked an average of sixty hours a week. Claimant sustained an industrial injury to his back on February 15, 1994. After injuring his back, claimant was unable to do the heavy lifting that his work for AEM required. He nevertheless found other employment, earning $10.98 an hour in date-of-injury dollars and working fifty to sixty hours a week.

¶ 7   Respondent Carrier State Compensation Fund (the Fund) recommended a statutory maximum average monthly wage. The supporting calculations were based upon claimant's hourly wage for AEM and a forty-hour week ($15.00 × 40 × 4.333 = $2599.80).[1] The recommendation also erroneously stated that claimant's actual earnings during the thirty days before his injury were $2599.80.

¶ 8   The ICA issued a notice of average monthly wage approving the average monthly wage "as determined by" the Fund. A.R.S. § 23–1061(F) (requiring ICA to determine average monthly wage). This notice also stated that the approved average monthly wage of $2100 is the "[m]aximum allowable pursuant to A.R.S. [section] 23–1041." This notice became final without protest. A.R.S. § 23–947(B) (codifying finality of unprotested notices).

¶ 9   In due course, the ICA issued a determination of no loss of earning capacity. Claimant timely protested this determination. The parties subsequently submitted a stipulation in lieu of a hearing. In addition to the facts summarized above, the parties agreed that: (1) to earn $2100 a month, claimant had to work only about thirty-two hours a week[2] at $15.00 an hour but had to work about forty-four hours a week at $10.98 an hour; and (2) claimant's present earning capacity at $10.98 an hour would be $1537.19 for about thirty-two hours a week, $1903.05 for forty hours a week, and $2100 for about forty-four hours a week.

¶ 10   The parties subsequently submitted legal memoranda and supplemental memoranda. Claimant contended that because he had to work only about thirty-two hours a week at $15.00 an hour to earn $2100 a month, his present earning capacity must be measured by the same number of hours at $10.98 an hour. Claimant did not rely on the notice of average monthly wage or the Fund's calculation supporting its recommended average monthly wage to argue that his present earning capacity should be based on no more than forty hours a week.

¶ 11   The ALJ then issued a findings and award for no loss of earning capacity. She referred to the stipulation but did not mention the notice of average monthly wage or the Fund's calculation supporting its recommended statutory maximum average monthly wage. Her dispositive findings stated in relevant part:

> 3.   Applicant alleges that because only 32.31 hours per week at $15.00 per hour (date of injury wages) was used to calculate his average monthly wage of $2,100 that only a similar number of hours can be used to calculate his current earning capacity.... Applicant relies on *Elias v. Industrial Commission,* 175 Ariz. 507, 858

---

1.   Although the monthly total must have used a multiple of 4.333 ($2599.80/600 = 4.333), the recommendation erroneously stated that the multiple was 30.416. The multiple of 4.333 represents the average weeks in a month. *See Procedures Manual, Claims Division, Industrial Commission of Arizona,* at 103 (1990), *reprinted in Arizona Workers' Compensation Handbook*

app. B, at 103 (Ray Jay Davis et al. eds., 1992 & Supp.1993). The multiple of 30.416 represents the average days in a month. *Id.*

2.   On review, claimant has used the figure of 140 hours a month. This is derived from 32.31 hours a week (32.31 × 4.333 = 139.99).

P.2d 652 (App.1992) to support [sic] position.

4.... Here, the Applicant proposes that he has sustained a 26.8% percent reduction in earning capacity based upon his present earning capacity of $1,537.19 (calculated if only 32.31 hours per week of the Applicant's current rolled back wages of $10.98 per hour are considered). However, the Applicant appears to *ignore the effect of the statutory cap on earnings which can be used to calculate earning capacity.* A.R.S. § 23–1041(E)(b) [sic]. The Applicant was *working 60 hours per week at the time of his injury* and *his earnings of $15.00 per hour were used to calculate his average monthly wage up to the statutory cap of $2,100 per month. The Applicant is currently employed working 50 to 60 hours per week and at those wages is still earning more than $2,100 per month.* The Applicant *is capable of and is working full time and for almost as many overtime hours as he did before his date of injury.* The analysis for lost earning capacity is based on an examination and comparison of the wages earned at the date of injury and the amount which represents the Applicant's ability to earn after he has returned to work.

. . . .

7. The Court of Appeals in *Elias, supra,* stated that there must be reciprocity in the number of hours used in calculating earning capacity. It did not reach the question of the effect of the statutory maximum cap on the amount of wages used in these calculations. Applicant has cited no statute or case law to support his position that the statutory maximum can or should be ignored. The undersigned finds that the number of hours used to calculate earning capacity must be capped by the statutory maximum set forth by the Legislature which establishes that average monthly wages cannot be higher than $2,100 per month. In this case, the Applicant works 50 to 60 hours per week at his current wages and this represents an earning capacity which is greater than $2,100 per month. Thus, the undersigned finds

that there is no lost earning capacity as a result of the industrial injury.

(Emphasis added.)

¶ 12 On administrative review, claimant criticized the ALJ for not mentioning the notice of average monthly wage or the Fund's calculation supporting its recommended statutory maximum average monthly wage. He also for the first time relied on these documents alternatively to argue that his present earning capacity should be based on no more than forty hours a week. Claimant, however, did not expressly request the ALJ to make additional findings.

¶ 13 After the Fund responded, the ALJ summarily affirmed the decision upon hearing. Claimant then timely filed this statutory special action. This court has jurisdiction under A.R.S. sections 12–120.21(A)(2) and 23–951(A), and Arizona Rule of Procedure for Special Actions 10.

### *DISCUSSION*

¶ 14 On review, claimant first argues that because the Fund's wage calculation was based on a forty-hour week, his present earning capacity should be based on no more than forty hours a week. Second, claimant argues that because he had to work only about thirty-two hours a week at $15.00 an hour to earn $2100 a month, his present earning capacity must be measured by the same number of hours at $10.98 an hour.

¶ 15 To support the first argument, claimant relies on *Laker v. Industrial Commission,* 139 Ariz. 459, 679 P.2d 105 (App. 1984). To support the second, he relies on *Elias,* 175 Ariz. 507, 858 P.2d 652. Both cases discuss and apply the equal measure rule. *See Laker,* 139 Ariz. at 464, 679 P.2d at 110 (applying equal measure rule to shift differential); *Elias,* 175 Ariz. at 509, 858 P.2d at 654 (applying equal measure rule to hours of work). We accordingly begin our analysis with this general rule.

¶ 16 The supreme court first applied the equal measure rule in *Whyte,* 71 Ariz. at 343–47, 227 P.2d at 232–35. The court concluded that average monthly wage and post-injury earning capacity must be measured by the same "yardstick" and therefore that post-

injury wages had to be discounted for any inflationary effects on wages. *Id.* (discussed with approval in 4 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 57.32(b) (1998)). The supreme court then applied the equal measure rule in *Sanchez v. Industrial Commission,* 96 Ariz. 19, 23–24, 391 P.2d 579, 582 (1964), in which it found that concurrent uncovered employment excluded from average monthly wage must be excluded from post-injury earning capacity.[3] This court has applied the equal measure rule in *Elias, Laker,* and *Arizona Public Service Co. v. Industrial Commission,* 16 Ariz.App. 274, 277–79, 492 P.2d 1212, 1215–17 (1972) (requiring comparison of base wage rates when average monthly wage included overtime and pay differential for higher job classification and post-injury wage included shift differential). *But cf. Oak Indus. v. Industrial Comm'n,* 153 Ariz. 608, 611, 739 P.2d 829, 832 (App.1987) (rejecting argument that because average monthly wage based on gross earnings, post-injury earning capacity must be based on gross earnings when date-of-injury employer paid business expenses but employee paid business expenses after his injury).

¶ 17   Claimant relies on *Laker* to support his first argument because that court applied the equal measure rule to exclude shift differential in the context of a rearrangement petition even though the claimant actually was earning a shift differential when his post-injury earning capacity was first assessed. 139 Ariz. at 464, 679 P.2d at 110.[4] Claimant contends that the current case is similar in that his average monthly wage determination excluded overtime even though he actually was earning overtime for AEM.

¶ 18   Claimant relies on *Elias* to support his second argument. In that case, the court applied the equal measure rule to exclude

full-time hours of post-injury work that the claimant was capable of performing after her injury when her average monthly wage was based on part-time hours of work. 175 Ariz. at 509, 858 P.2d at 654. Noting that the claimant was earning $15.82 an hour when injured and could earn at most $10.55 an hour after her injury, the court concluded that if the claimant had "permanently lost the capacity to earn the higher wage, she is entitled to compensation for this loss." *Id.* Claimant contends that the current case is similar in that he has permanently lost the capacity to earn his higher $15.00 an hour wage and therefore he is entitled to compensation based upon his current $10.98 an hour wage for 140 hours a month.

¶ 19   Claimant's arguments overlook a conspicuous difference between the current case and all other prior Arizona cases applying the equal measure rule. Claimant's average monthly wage was computed under A.R.S. section 23–1041(E)(4) by excluding all wages in excess of $2100. None of the prior cases involved the statutory maximum average monthly wage.

¶ 20   In our opinion, the statutory maximum average wage necessarily affects the applicability of the equal measure rule. We find it important to note the potential arbitrariness of the equal measure rule given Arizona's low workers' compensation schedule. Together, these rules deny compensation to a more diligent worker, for example one who works overtime, while allowing an identically situated claimant who does not work overtime to receive comparable compensation.

¶ 21   We have not discovered any Arizona case discussing hours of date-of-injury work excluded from the average monthly wage calculation as a result of the statutory maximum average monthly wage.[5] However, this

---

3.   The principle enunciated in *Sanchez,* that concurrent dissimilar employment is excluded from a worker's average monthly wage, was subsequently overruled by the supreme court in *Wiley v. Industrial Commission,* 174 Ariz. 94, 847 P.2d 595 (1993).

4.   The court did not explain why shift differential had been excluded when post-injury earning capacity was first assessed. Presumably it was

excluded because the claimant was not earning shift differential from his date-of-injury employer. *Laker* therefore involved sequential applications of the equal measure rule.

5.   We also have not discovered any discussion of this issue in Larson's treatise. *See generally* 4 Larson & Larson, *supra* §§ 57.32 –33(c); 5 Larson & Larson §§ 60.12(d), 60.40–41.

court has previously rejected the argument that *Whyte* should apply to the statutory maximum wage:

> *Whyte* concerned comparison of pre-injury and post-injury earnings for the purpose of computing permanent partial disability benefits.... To comply with the requirements of *Whyte* ..., such comparisons must be accomplished in this fashion: From the lesser of claimant's monthly earnings at the time of injury or the statutory maximum of § 23–1041(E), the Industrial Commission subtracts the claimant's post-injury monthly earning capacity corrected to remove any increment attributable to post-injury inflation. The difference, if any, is the claimant's cognizable lost earning capacity. Failure to make such adjustment for post-injury inflation, according to *Whyte* ..., would permit inflation to mask a significant loss of earning capacity *within the compensable range permitted by § 23–1041(E)* as slight or none at all.

> Yet § 23–1041(E) sets the compensable range, and earnings which fall outside it, no matter how substantial, are excluded from the determination of lost earning capacity. That is the very purpose of § 23–1041(E), which clearly caps the compensable range in dollars. Though *Whyte* ... require[s] inflationary adjustments *within* the compensable range, ... [it does] not require inflationary adjustment of its express statutory ceiling.

*McPeak v. Industrial Comm'n,* 154 Ariz. 232, 234–35, 741 P.2d 699, 701–02 (App.1987).

¶ 22 In the current case, claimant is similarly attempting to apply the equal measure rule to obtain disability benefits *outside* the compensable range permitted by A.R.S. section 23–1041(E)(4). He was routinely working overtime for AEM, and his industrial injury has not affected his capacity to work overtime. Therefore, the ALJ properly considered claimant's actual post-injury wages to find that he remained capable of earning his statutory maximum average monthly wage.

*CONCLUSION*

¶ 23 Based on the above, we affirm the decisions upon hearing and upon review for no loss of earning capacity.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and EDWARD C. VOSS, Judge.